PATTERSON *v.* STATE.

(*Jackson,* April Term, 1946.)

Opinion filed June 1, 1946.

Roger G. Murray and Vester G. Brady, both of Jackson, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Justice Neil delivered the opinion of the court.

The plaintiff in error, who will hereinafter be referred to as the defendant, is under conviction of receiving

stolen property. The jury fixed his punishment at six months in the county workhouse, from which he appealed and assigned errors, as follows:

"The Court erred in refusing to grant defendant's motion for a new trial for the following reasons, to-wit:

"(1) The Court erred in overruling the defendant's objection to the testimony of Ernest Franklin, Harvey Marcum, and Joseph Cooksey, on direct examination by the State and of the defendant, on cross examination by the State, that automobile tires were rationed at the time the tires in question were purchased by the defendant, and so purchased without a ration certificate, such evidence being immaterial and irrelevant to the issue, being introduced by the State for the sole purpose of prejudicing the jury against the defendant.

"(2) The Court erred in admitting the testimony of Harvey Marcum on direct examination by the State as to what the defendant stated at the preliminary hearing. The same being inadmissible both as to substance and manner of admission.

"(3) The evidence preponderated in favor of the innocence of the defendant and against the verdict of guilty found by the jury."

The defendant is a negro who operates a pool room in Union City. He has no criminal record other than two convictions for violating the liquor laws. We gather from the record that he is well thought of by his acquaintances in Union City. He had operated a pool room for about a year before his present conviction and prior to that time he worked for the Palace Hotel in Union City for fifteen or twenty years.

There is very little dispute about the facts. While it is a rather close question as to whether or not the defendant had guilty knowledge that the automobile

tires which he purchased were stolen, he is before us under a presumption of guilt and we cannot say that the evidence preponderates against the verdict and in favor of his innocence.

The defendant Patterson purchased three automobile tires from a colored man who was a night watchman for Frankland Carriage Corporation in Jackson, Tennessee. The defendant and several friends had driven to Jackson from Union City to do some shopping. As the party was preparing to return home they had a tire puncture. One of the party, J. P. Hardin, went to the Frankland Company to get someone to fix it. He was unable to get anyone to render this service, but he borrowed a jack with which to change the tire. After changing the tire, the defendant drove to the Frankland Garage and left it to be repaired. He was told that it would be ready in thirty or forty minutes. The defendant went off with his companions and returned as instructed, but the tire was not ready. At this time defendant was asked by the colored watchman Cross if he would like to purchase some new tires. There was some discussion between them as to their quality and if they were old tires that had been repaired. No purchase was made at that time. The defendant left and after being gone for about thirty minutes to get something to eat, he returned to the garage. He found his tire was ready and the watchman Cross again mentioned selling him the new tires. Cross took the defendant and his companion Hardin upstairs where the tires were stored. The defendant said they were stacked as high as his head. He purchased three tires at ten dollars each. He said he needed the tires and bought them without a certificate.

It is contended by defendant and not controverted that the garage was open, lights burning, and other persons were present.

The defendant sold two of these tires to one McLemore. The latter made a trip to Jackson and went to the Frankland Garage to see about a tire believed to have been left there when the tires were purchased. It was upon this trip that the two tires on McLemore's car were noticed and identified as tires that had been stolen. McLemore stated to the employees of Frankland at that time that he had bought them from the defendant Ezell Patterson. A warrant was issued for the arrest of Patterson and he was brought to Jackson. He admitted purchasing the tires and surrendered the third tire remaining in his possession. His defense before the committing magistrate and also when tried on the indictment was that he bought the tires in good faith and without any knowledge that Cross had stolen them.

The State introduced testimony as to statements made by the defendant in the court of general sessions. One Harvey Marcum, a police sergeant, testified as follows:

"Q. Were you present at the preliminary hearing in Jackson, Tennessee? A. Yes, sir.

"Q. What statement did he make there? (Here the defendant objected to the admission of the defendant's statement at the preliminary hearing, which objection was overruled by the Court and the defendant excepted.) A. He had a puncture down near Frankland's and what started at all, a colored night watchman asked him if he wanted to buy some tires. He asked him if they were new or third grade tires, and was told that they were new tires, so he asked how much he wanted for them and he said $10.00 each. So he went off and according to his

statement he made three trips back to Frankland's before everything was clear so that he could pick them up.

"Q. Made three trips that night? A. Yes, sir. According to his statement he picked them up about 8:00 or 8:15 that night.

"Q. How much did he pay for them? A. $10.00.

"Q. What did he say as to what he did with them after buying them? A. He let a boy named James McLemore have two of them.

"Q. Did he say how much he got for them? A. He let him have them for the same price he paid for them.

"Q. Did he save a certificate to purchase them? (Here the defendant objected, which objection was overruled by the Court and the defendant excepted.) A. He didn't have a certificate to purchase them, he said."

As to the price paid for these tires, the defendant testified on cross-examination as follows:

"Q. You knew tires were more than $10.00. A. Yes, I knew that was below the ceiling.

"Q. You knew you were buying them and not paying the regular price? A. He wasn't requiring a certificate and there could have been some defect in them.

"Q. Didn't you know something was radically wrong? A. I thought there was some defects.

"Q. You inquired as to whether or not they were new tires or third grade? A. We needed the tires.

"Q. With or without a certificate? A. I have known them to sell tires without a certificate.

"Q. Brand new tires A. Yes, sir.""

The principal contentions made in the assignments of error are (1) that the court erred in allowing proof that tire rationing was in vogue at the time the defendant purchased the tires; and (2) that it was error to permit the

police sergeant Marcum to testify as to statements made by defendant in the general sessions court.

We find from an examination of the record that, when defendant's counsel objected to the testimony which is made the basis of these assignments, he did not state to the trial judge any reason why the testimoney should be excluded. This form of objection to the competency and relevancy of testimony is not sufficient to put the trial court in error. The reason is clearly and forcibly stated in *Crane* v. *State,* 94 Tenn. 86, at page 89, 90, 28 S. W. 317, at page 318 as follows: "The testimony of both these witnesses was objected to in the court below, but the ground of objection does not appear in the record. It has been repeatedly held that in criminal as well as civil cases a general objection in the court below, without assigning any reason therefor, will not be noticed in this court. [*Louisville, N. & G. S.*] *Railroad Co.* v. *Fleming,* 82 Tenn. (14 Lea.) 128, 129; *Baxter* v. *The State,* 83 Tenn. (15 Lea.) 657; [*Knoxville*] *Iron Co.* v. *Dobson,* 83 Tenn. (15 Lea.) 409; *Druggist Cases,* 85 Tenn. (1 Pick.) 449, 3 S. W. 490; *Powers* v. *McKenzie,* 90 Tenn. (6 Pick.) 167, 16 S. W. 559; *Railway Co.* v. *Beeler,* 90 Tenn. (6 Pick.) 548, 18 S. W. 391; *Graham v. McReynolds,* 90 Tenn. (6 Pick.) 673, 674, 18 S. W. 272; *Miller* v. *State,* 80 Tenn. (12 Lea.) 223. The reason is, that the opposite party may by given the opportunity to act advisedly, and not be entrapped into error after it is too late to remedy the matter by introducing other evidence which might be done if specific objection was made."

While the foregoing general rule is sufficient justification for overruling the assignment, we have nevertheless given consideration to it because of the importance of the question made in the assignment. We think it was competent and relevant to show that automo-

bile tires were rationed when defendant made his purchase. The mere fact that purchasing tires without a certificate authorizing it is a crime punishable under federal law furnishes no reason for excluding the testimony. At the time defendant made the purchase no one was permitted to buy tires without a permit. When the night watchman Cross agreed to sell them at a reduced price, $10 (when the retail price was $16.50), and without demanding a certificate, the defendant should have known that it could not be considered a bona fide sale. When pressed on cross-examination if he did not know it was wrong insofar as he, the buyer, was concerned, he answered in the affirmative, although he stated that he had known of people buying tires without having a permit.

The law with reference to proof of other crimes is well stated by Mr. Justice SWIGGART in *Woodruff* v. *State,* 164 Tenn. 530, 539, 540, 51 S. W. (2d) 843, 846, wherein he quoted with approval the rule announced in *Defrese* v. *State,* 50 Tenn. 53, 8 Am. Rep. 1, as follows: "It may be safely assumed that whatever tends to explain or elucidate the charge in question, or to demonstrate the guilty connection of the parties therein, may be given in evidence *though it may be a ground of another and distinct accusation.*" (Italics ours.)

This assignment of error is without merit and is accordingly overruled.

In support of the second assignment complaining of error in admitting proof of defendant's statements before the general sessions court, counsel for defendant relies on *Alfred* v. *State,* 32 Tenn. 581. As pointed out by the assistant attorney general, this case was decided in 1853, and the Court was construing Code sections 11554 to 11560, inclusive, which relate to trials before a committing magistrate. It is under these sections of the

Code that defendant insists that only statements made by him and which were reduced to writing by the magistrate are competent, and that proof of any other statement is not admissible.

In *Alfred* v. *State, supra,* the accused were two slaves who were convicted of the murder of their master and upon whom the death sentence had been pronounced. One assignment of error related to the alleged confession of defendants. Certain statements were excluded by the court. It was there said, (p. 588 of 32 Tenn.), "Confessions of the defendants were taken down by the committing magistrate, on examination before him, and this was admitted as evidence to the jury against the objection of defendants' counsel." Now when this cast was decided, and prior thereto, an accused could not testify for himself; consequently, it was held that confessions made before a committing magistrate and taken down by him could not be used by the accused "because he cannot be allowed to make evidence for himself." It could only be used by the State. It was held by Judge CARUTHERS that if the evidence is written down by the magistrate "that is the proper evidence," etc., and particulars of the examination "cannot be given in evidence *viva voce.*"

We are constrained to agree with the assistant attorney general that the foregoing decision was made with reference to admissions of the unsworn statements made by the accused before the examining magistrate. It had no reference to one testifying in his own behalf as a matter of right, as provided by Code section 9782 (Acts of 1887). This section reads as follows: "In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein."

Under this section a defendant in a criminal case may testify in his own behalf even though he is laboring under a sentence of infamy. *Morgan* v. *State,* 86 Tenn. 472, 7 S. W. 456. Since the adoption of the foregoing code section a defendant is treated as other witnesses, except he cannot be compelled to give evidence against himself. When an accused is brought before a committing magistrate or any other court he cannot be forced to testify; he may waive examination; he may testify in his own behalf, in which event it is not regarded as "an unsworn statement or a confession". He may be impeached, as any other witness, by any of the recognized methods known to the law.

The exact question made in this assignment of error was considered in *Kendrick* v. *State,* 29 Tenn. 479, and again in *Wade* v. *State,* 66 Tenn. 80, in which defendant's contention was held to be without merit. In the latter case the Court referred to *Kendrick* v. *State, supra,* and re-affirmed the rule announced therein, using the following language, 66 Tenn. at pages 80, 81: "The specific objection here is, that the evidence was not taken down by the committing magistrate as directed by the statute. In the case referred to of *Kendrick* v. *State,* 29 Tenn. (10 Humph.) 479, as in this case the evidence of the deceased witness was given before a committing magistrate, and it was held competent to prove his statement by any person who was present and heard the *viva voce* testimony of the deceased,—the judge, jurors, counsel or bystander, may prove it, provided he will on his oath undertake to repeat it in such detail as the court may require; sec. 488. If so, it is for this wholly immaterial whether it was taken down in writing or not."

The foregoing authority is conclusive of the question made in defendant's second assignment of error and it must be overruled. We find no error in the record and the judgment of the trial court is affirmed.